DAVID CHIU, State Bar #189542
City Attorney
JENNIFER E. CHOI, State Bar #184058
Chief Trial Deputy
JOSE A. ZELIDON-ZEPEDA, State Bar #227108
LISA E. GIARRATANO, State Bar #346002
KATHERINE B. BEARMAN, State Bar #280561
Deputy City Attorneys
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone: (415) 355-3312 [Zelidon-Zepeda]
Telephone: (415) 554-3813 [Giarratano]
Telephone: (415) 554-4256 [Bearman]
Facsimile: (415) 554-3837
E-Mail: jose.zelidon-zepeda@sfcityatty.org
E-Mail: lisa.giarratano@sfcityatty.org
E-Mail: kate.bearman@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO
AND JEFFREY LUBEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY CASTEL NAVARRO, AN INDIVIDUAL,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; OFFICER JEFFREY LUBEY, IN HIS INDIVIDUAL CAPACITY AS A LAW ENFORCEMENT OFFICER FOR THE SAN FRANCISCO POLICE DEPARTMENT; AND DOES 1-50, INCLUSIVE,<br><br>Defendants. | Case No. 23-cv-02402 SK (PHK)<br><br>**DEFENDANTS CITY AND COUNTY OF SAN FRANCISCO AND JEFFREY LUBEY'S TRIAL BRIEF**<br><br>Trial Date: November 17, 2026 |

**INTRODUCTION AND FACTUAL BACKGROUND**

This case stems from a confrontation that Plaintiff Anthony Navarro initiated with San Francisco Police Officers during a chaotic street celebration in San Francisco's Mission District on June 16, 2022. The Golden State Warriors had just won the National Basketball Association Championship. Plaintiff—who had been drinking at a bar and was intoxicated—approached, obstructed, grabbed at, and made physical contact with SFPD Officer Jacob Horton, who was trying to help someone who had climbed a light pole. Plaintiff ignored Officer Horton's repeated commands to get back. After Officer Horton managed to maneuver around him, Plaintiff walked closely behind Defendant Officer Jeffrey Lubey, who had been following Officer Horton to the light pole. Plaintiff moved into Officer Lubey's blind spot and pushed him on his upper left back area. Although Plaintiff disputes that he pushed or shoved Officer Lubey, percipient witness testimony and body-worn camera videos confirm it. Fearing a continued attack, Officer Lubey took Plaintiff to the ground. Several SFPD officers helped Officer Lubey put Plaintiff in handcuffs.

The officers then moved Plaintiff to the sidewalk and sat him down against a building to wait for a police van to take him to Mission Station. While seated on the sidewalk, Plaintiff was bleeding from his mouth. He refused paramedics' offers for medical care; yelled profanities at Officer Lubey; reached into his pockets (despite being handcuffed); and tried to stand up more than once, despite being ordered to stop. When the police van arrived, Officer Lubey escorted Plaintiff to the van by holding his handcuffed arms above his head. Plaintiff contends this escort method was painful, but he never informed the officers that he was in pain during the escort.

Plaintiff was cited for delaying, resisting, or obstructing a police officer in violation of California Penal Code section 148, and for battery on a police officer in violation of Penal Code section 243. He was released the same evening from Mission Station. Ultimately, the San Francisco District Attorney's Office did not charge Plaintiff with any crimes.

The day after the incident, Plaintiff went to Kaiser Permanente. He had abrasions on his face and knees, but x-rays ruled out any trauma or fractures, and a physical exam ruled out tenderness along the cervical spine or back. Plaintiff sought no further medical treatment relating to physical

injuries from the incident. Plaintiff claims, however, that the incident exacerbated preexisting mental health issues, including post-traumatic stress disorder.

**PROCEDURAL HISTORY AND REMAINING CLAIMS FOR TRIAL**

Defendants in this lawsuit are Officer Jeffrey Lubey and the City and County of San Francisco ("City"). On November 12, 2024, this Court granted Defendants' motion for summary judgment on Plaintiff's claim under 42 U.S.C. § 1983 for false arrest in violation of the Fourth Amendment, and on Plaintiff's claim for false arrest in violation of California law. The Court determined that the undisputed facts showed Officer Lubey had probable cause to arrest Plaintiff for delaying, resisting, or obstructing a police officer in violation of Penal Code section 148. The Court denied Defendants' motion for summary judgment on Plaintiff's remaining claims. Regarding Plaintiff's constitutional claims for excessive force and retaliation, the Court determined that Officer Lubey was not entitled to qualified immunity because, resolving factual disputes in Plaintiff's favor, the law was clearly established at the time of the incident that Officer Lubey's alleged actions violated the constitution. Defendants took an interlocutory appeal of the qualified immunity decision. The Ninth Circuit affirmed on November 13, 2025. Thus, the following claims remain for trial: excessive force in violation of the Fourth Amendment, negligent force in violation of California law, battery in violation of California Law, retaliation in violation of the First Amendment, and violation of the California Bane Act (Cal. Civ. Code § 52.1).

**ARGUMENT**

**I. Defendant Lubey Did Not Use Excessive Force in Violation of the Fourth Amendment**

To determine whether the force used by a law enforcement officer was reasonable under the Fourth Amendment, courts consider "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted); *see also Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007). Generally, courts weigh the amount of force used against (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of officers and others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1153 (9th Cir. 2022). The "most

important" factor is whether the individual posed an "immediate threat" to the safety of the officers or others. *Id.* These factors are not exclusive. Courts must examine the "totality of the circumstances and consider whatever specific factors may be appropriate in a particular case." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (internal quotation marks and citations omitted). The reasonableness inquiry in excessive force cases is an objective one, the question being whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation, and without the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396-97. Police officers are not required to use the least intrusive degree of force possible; they are required only to act within a reasonable range of conduct. *See Forrester v. City of San Diego*, 25 F.3d 804, 806-07 (9th Cir. 1994) (use of minimal and controlled force in a manner designed to limit injuries was reasonable).

The evidence at trial will show that Plaintiff Navarro posed a threat to Officer Lubey's, and others' safety. Among other things, Plaintiff chose to approach a uniformed Officer Horton while he was trying to help someone else, grabbed at him, and made physical contact with him, ignoring his orders to stop. Officer Lubey ordered Plaintiff to get back, but Plaintiff nevertheless moved into Officer Lubey's blind spot and shoved him on the upper left shoulder area. Plaintiff behaved in this manner during a chaotic street celebration that could easily have turned riotous.

A reasonable officer in Officer Lubey's position would have believed that Plaintiff Navarro was threatening his, and others', safety, and that Lubey needed to quickly take physical control of Plaintiff to defuse the threat. Defendants' police practices expert, Jeffrey Martin, will testify that Officer Lubey's takedown method complied with SFPD training and was a method that reasonable officers in Lubey's situation would have used.

**A. Affirmative Defense: Qualified Immunity**

A government official is entitled to qualified immunity unless "existing precedent [has] placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity ensures that individuals have "fair notice that [their] conduct was unlawful" before they are held liable for constitutional violations. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Immunity should be granted

even where an individual makes a reasonable mistake about either the state of the law or the facts. *Pearson*, 555 U.S. at 231. To determine whether qualified immunity applies, courts consider: (1) whether a constitutional violation occurred; and (2) whether clearly established law would have informed the official that in the particular factual circumstances, the constitution prohibited the actions at issue. *Ashcroft*, 563 U.S. at 735; *see also White v. Pauly*, 580 U.S. 73, 78-79 (2017).

Defendants will assert their qualified immunity defense at trial. As shown in Defendants' proposed jury instructions and verdict form submitted herewith, Defendants are asking the Court to submit special interrogatories to the jury regarding factual issues that will help the Court decide qualified immunity as a matter of law. *See, e.g.*, *Morales v. Fry*, 873 F.3d 817, 819, 824 (9th Cir. 2017) ("[T]he 'clearly established' prong of the qualified immunity analysis" is "a question of law that must ultimately be decided by a judge," but "special interrogatories to the jury can be used to establish disputed material facts" to aid the court's legal analysis).

Even if the jury determines that Officer Lubey used excessive force, the evidence will show he is entitled to qualified immunity. Specifically, when the incident occurred, it was not clearly established that Officer Lubey would violate the Fourth Amendment by taking Plaintiff to the ground where Plaintiff had initiated contact with police officers during a chaotic street event that had potential to turn riotous, obstructed Officer Horton as he was trying to help someone else in danger, grabbed at and touched Officer Horton despite being ordered to get back, received an order from Officer Lubey to get back, moved closely behind Officer Lubey in his blind spot, and shoved Lubey in the upper left shoulder area. It is Plaintiff's burden to identify a case that says otherwise. He cannot.

## II. Defendant Lubey Did Not Commit Battery

"California battery claims are coextensive with claims for excessive force under the Fourth Amendment." *Alves v. Cnty. of Riverside*, 135 F.4th 1161, 1166 n.3 (9th Cir. 2025) (citing *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272-73, 1274 (1998)). The evidence at trial will show that Plaintiff's battery claim fails on the merits for the same reasons as his excessive force claim.

## III. Defendant Lubey Was Not Negligent in Using Force

To prove negligence under California law, a plaintiff must show that the defendant has "a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." *Alves*, 135 F.4th at 1170 (quoting *Vasilenko v. Grace Fam. Church*, 3 Cal.5th 1077, 1083 (2017)). Law enforcement officers have a duty to act reasonably when using force. *Hayes v. Cnty. of San Diego*, 57 Cal.4th 622, 629 (2013) (discussing deadly force). California law regarding negligent use of force "is broader than federal Fourth Amendment law." *Hayes*, 57 Cal.4th at 639; *see also, e.g.*, *Alves*, 135 F.4th at 1172. The broader nature of negligence claims is not limited to pre-force tactical decisions. *See Alves*, 135 F.4th at 1172. Both the Ninth Circuit and the California Supreme Court have stated that the standards differ in that the Fourth Amendment typically focuses "more narrowly on the moment" when force was used, whereas California law focuses on the "totality of the circumstances." *Hayes*, 57 Cal.4th at 639; *see Alves*, 135 F.4th at 1172-73.

But practically speaking—and especially where, as here, the California negligence claim is based on the exact same actions as the Fourth Amendment excessive force claim—it is unclear where the daylight between the standards lies. Under both standards, a jury must consider the "totality of the circumstances" in determining whether a use of force was reasonable. *Graham*, 490 U.S. at 396; *Alves*, 135 F.4th at 1169; *Hayes*, 57 Cal.4th at 639. Under both standards, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Hayes*, 57 Cal.4th at 632 (quoting *Graham*, 490 U.S. at 396) (internal quotation marks omitted); *see also Alves*, 135 F.4th at 1170. And under federal law, jurors are, in fact, instructed to consider many circumstances leading up to the use of force. *See* Ninth Circuit Model Civil Jury Instruction No. 9.27 & Comment (listing, *inter alia*, the nature of the crime and the circumstances the officers knew at the time they applied force; whether the plaintiff posed an immediate threat to the safety of the officers or others; the amount of time the officers had to determine what force was necessary; changing circumstances during that period; and efforts the officers made to temper or limit force (citing cases)).

Just as the evidence at trial will show that Officer Lubey did not use unreasonable force in violation of the Fourth Amendment, the evidence will show he was not negligent in his use of force.

**A. Affirmative Defense: Comparative Fault**

As an affirmative defense to Plaintiff's negligence claim, Defendants will argue that Plaintiff was comparatively at fault, and that his damages on the negligence claim, if any, should be apportioned. *See, e.g.*, CACI 405 (Comparative Fault); *Bailey v. Cnty. of Riverside*, 414 F.3d 1023, 1025 (9th Cir. 2005) (affirming judgment on jury verdict in favor of plaintiff on claims for excessive force in violation of the Fourth Amendment and negligent use of force in violation of California law, where damages on the negligence claim had been "substantially reduced for the contributory negligence of the plaintiff"). This issue is one for the jury to decide.

**IV. Defendant Lubey Did Not Retaliate Against Plaintiff in Violation of the First Amendment**

To prevail on his First Amendment retaliation claim, Plaintiff must show "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). To establish causation, Plaintiff must show "that the adverse action against [him] would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019). Plaintiff claims that after he was arrested, he questioned and criticized Officer Lubey, and, thereafter, Lubey chose to use a painful escort method. Even assuming Plaintiff's speech was protected, the evidence at trial will not carry Plaintiff's burden on the other elements. For example, the only evidence Plaintiff will be able to present regarding Officer Lubey's purported motive is timing: Lubey used the escort method after Plaintiff's speech. But timing is insufficient, on its own, to establish retaliatory motive. *See, e.g.*, *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). Furthermore, the evidence will show that the escort method was not an adverse action, but rather a standard method for transporting an arrestee to minimize his opportunity to flee, fight, or otherwise endanger himself or others. The evidence will show that Officer Lubey would have used the escort method regardless of Plaintiff's speech to prevent Plaintiff from spitting blood on him, trying to escape, or reaching into his pockets.

**A. Affirmative Defense: Qualified Immunity**

Even if Plaintiff prevails on his First Amendment claim, Officer Lubey is entitled to qualified immunity. It was not clearly established in 2022—nor is it now—that police officers cannot use information gained from an arrestee's speech in assessing the risk that the arrestee poses and calibrating an appropriate escort method. *See, e.g.*, *Boquist v. Courtney*, 32 F.4th 764, 778 (9th Cir. 2022) ("Thus, government officials do not violate a plaintiff's First Amendment rights if they had an objectively legitimate need to implement security measures in response to information conveyed by the plaintiff's speech, and would have implemented the same security measures in the absence of any retaliatory motive."); *cf. Nieves*, 587 U.S. at 401 ("Officers frequently must make split-second judgments when deciding whether to arrest, and the content and manner of a suspect's speech may convey vital information—for example, if he is ready to cooperate or rather present[s] a continuing threat." (internal quotation marks omitted)); *Reichle v. Howards*, 566 U.S. 658, 668 (2012) (an officer may, without violating the First Amendment, "decide to arrest [a] suspect because his speech provides evidence of a crime or suggests a potential threat").

**V. Defendant Lubey Did Not Violate the Bane Act**

The Bane Act prohibits interference or attempted interference with a person's rights under the United States or California Constitutions and laws by "threats, intimidation, or coercion." Cal. Civ. Code § 52.1(a)-(b). To prove his Bane Act claim, Plaintiff must show a constitutional violation and prove that Officer Lubey had the "specific intent to violate" the constitutional right at issue. *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022). Plaintiff cannot show an underlying constitutional violation for the reasons already discussed. Nor will he be able to present any evidence that Officer Lubey specifically intended to violate any constitutional right.

**VI. The Nature and Extent of Plaintiff's Damages Are Disputed**

Based on evidence including medical treatment records, Plaintiff's physical injuries and damages stemming from the incident were minimal. The factual record, including treatment records and expert testimony, show the minimal extent to which the events underlying this lawsuit exacerbated Plaintiff's pre-existing mental health issues (or caused new ones). And Plaintiff is not entitled to

punitive damages on any claim because there is no evidence that Officer Lubey acted maliciously, oppressively, or in reckless disregard of Plaintiff's rights.

Dated: October 1, 2026

DAVID CHIU
City Attorney
JENNIFER E. CHOI
Chief Trial Deputy
JOSE A. ZELIDON-ZEPEDA
LISA E. GIARRATANO
KATHERINE B. BEARMAN
Deputy City Attorneys

By: *\/s\/ Jose A. Zelidon-Zepeda*
JOSE A. ZELIDON-ZEPEDA

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO
AND JEFFREY LUBEY