DAVID CHIU, State Bar #189542
City Attorney
JENNIFER E. CHOI, State Bar #184058
Chief Trial Deputy
JOSE A. ZELIDON-ZEPEDA, State Bar #227108
LISA E. GIARRATANO, State Bar #346002
KATHERINE B. BEARMAN, State Bar #280561
Deputy City Attorneys
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone: (415) 355-3312 [Zelidon-Zepeda]
Telephone: (415) 554-3813 [Giarratano]
Telephone: (415) 554-4256 [Bearman]
Facsimile: (415) 554-3837
E-Mail: jose.zelidon-zepeda@sfcityatty.org
E-Mail: lisa.giarratano@sfcityatty.org
E-Mail: kate.bearman@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO
AND JEFFREY LUBEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY CASTEL NAVARRO, AN INDIVIDUAL,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; OFFICER JEFFREY LUBEY, IN HIS INDIVIDUAL CAPACITY AS A LAW ENFORCEMENT OFFICER FOR THE SAN FRANCISCO POLICE DEPARTMENT; AND DOES 1-50, INCLUSIVE,<br><br>Defendants. | Case No. 23-cv-02402 SK (PHK)<br><br>**DEFENDANTS' MEMORANDUM RE DISPUTED JURY INSTRUCTIONS**<br><br>Trial Date: November 17, 2026 |

Defendants Jeffrey Lubey and the City and County of San Francisco respectfully submit this memorandum of law in support of Defendants' disputed proposed jury instructions.

## I. PATTERN INSTRUCTIONS

### A. Disputed Instruction No. 1.19 (Questions to Witnesses by Jurors During Trial, Offered by Defendants), Offered by Defendants

The Ninth Circuit Manual of Model Civil Jury Instructions ("NCMCJI") supplies authority for Defendants' proposed instruction: Option 2 in the model instruction allows jurors to ask questions of witnesses and invites the parties to describe a process by which questions would get asked. *See also, e.g.*, *United States v. Huebner*, 48 F.3d 376, 382 (9th Cir. 1994) (district judge did not err or abuse discretion in allowing jurors to "request[] evidence on particular points," where "[t]he procedure was entirely neutral," and the defendant-appellant did not "point out prejudice resulting from any of the few questions asked"). Plaintiff objects and wishes to use Option 1 from the model instruction, which does not allow juror questions.

Allowing jurors to ask permissible questions of witnesses assists the jurors' fact-finding process, including by letting them follow up on testimony they did not understand. In Defendants' proposed version of Instruction No. 1.19, Defendants have described a procedure for ensuring that the Court and attorneys would screen the questions for legal and evidentiary issues, such that only permissible questions would be asked.

### B. Disputed Instruction No. 2.9 (Impeachment Evidence – Witnesses), Offered by Defendants

Defendants propose giving the NCMCJI model instruction regarding impeachment evidence. Plaintiff opposes giving the instruction because, to date, there is no evidence that a witness has been convicted of a crime or lied under oath. The parties do not know how the evidence will unfold, however. Defendants' proposed instruction accurately states the law, and there is no reason to omit it at this stage.

### C. Disputed Instruction No. 9.11 (Particular Rights—First Amendment – "Citizen Plaintiff"), Offered by Defendants

There are two differences between the parties' proposed instructions on the First Amendment claim.

The first concerns the description of Plaintiff's claim. Paragraph 1 of the NCMCJI model instruction directs the parties to "insert factual basis of the plaintiff's claim." Defendants inserted this information by summarizing their understanding of the basis for Plaintiff's claim. By contrast, Plaintiff inserted no information at all. Defendants object to this gap in Plaintiff's instruction. Without knowing what Plaintiff intends to claim, Defendants are unable to provide a further substantive response to this portion of Plaintiff's proposed instruction.

The parties' other dispute concerns whether the Court should instruct the jury that Plaintiff's relevant conduct was protected under the First Amendment, and that Plaintiff has therefore proved the first element of his claim. Plaintiff requests this instruction. Defendants oppose it. As noted above, Plaintiff has refused to define the basis of his claim—including what the alleged protected conduct was. Without that information, Defendants cannot stipulate to an instruction telling the jury that Plaintiff's conduct was protected.

**D. Disputed Instruction No. CACI 3066 (Bane Act Re Essential Factual Elements (Civ. Code, § 52.1)), Offered by Defendants**

The parties propose different, modified versions of the CACI pattern instruction for the Bane Act claim. Defendants' proposal closely tracks the pattern instruction and therefore accurately states the law. By contrast, Plaintiff's proposal departs from the pattern instructions. In so doing, it conflates elements of the claim and lowers the standard of proof. The Court should adopt Defendants' proposal.

For Element 1, CACI provides three options. Defendants' proposal is straightforward: it selects the first option and modifies it only to specify the parties' names and the right at issue (freedom from excessive force). The second and third options for Element 1 are inapplicable because Plaintiff claims Officer Lubey actually interfered with his right—not that Lubey caused Plaintiff to reasonably believe Lubey would commit violence if he exercised his right, or that Lubey acted violently against Plaintiff to prevent him from exercising his right. Plaintiff's proposal does not use any of CACI's options for Element 1. Instead, it uses different language that conflates Element 2 (the intent requirement) with Element 1 (interference with the right at issue). (Element 1 of Plaintiff's proposal states, in relevant part, that Lubey "used unreasonable force deliberately and/or with reckless

disregard" for Plaintiff's "constitutional right . . . .") Plaintiff's proposal for Element 1 also omits the requirement that Officer Lubey must have used "threat, intimidation, or coercion" in allegedly interfering with Plaintiff's right—a requirement drawn verbatim from the statute. Civ. Code, § 52.1(b). Defendants' proposal on Element 1 is a correct statement of the law, fairly covers the issues presented, and is not misleading. *See Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009).

Regarding Element 2, the only difference between the parties' proposals is that Defendants' version uses "specifically intended," whereas Plaintiff's proposal uses "intended." Defendants' modification departs from the CACI model instruction, but it has direct support in the case law. *See, e.g.*, *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2019) ("[T]he Bane Act requires 'a *specific intent* to violate the arrestee's right to freedom from unreasonable seizure.'") (emphasis added) (quoting *Cornell v. City & Cnty. of San Francisco*, 17 Cal.App.5th 766, 801 (1st Dist. 2017), as modified (Nov. 17, 2017)). Relatedly, both California courts and the Ninth Circuit have emphasized that the intent requirement is what sets a Bane Act claim apart from a Section 1983 claim for the same underlying violation. *See, e.g.*, *Reese*, 888 F.3d at 1044-45 (district court erred in instructing the jury "that if Reese prevailed on his Fourth Amendment claim, then he also prevailed on his Bane Act claim," because due to that instruction, the jury "did not consider Deputy Rose's intent in its finding that he violated Reese's Fourth Amendment rights"); *Cornell*, 17 Cal.App.5th at 801 ("[W]e hold that, where, as here, an unlawful arrest is properly pleaded and proved, the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure, not by whether the evidence shows something beyond the coercion 'inherent' in the wrongful detention."). The courts' discussions on this point further support using the term "specific intent" (or "specifically intended") in the jury instruction.

There are no other material differences between the parties' proposals.

## II. SPECIAL INSTRUCTIONS

### A. Defendants' Proposed Special Instruction No. 1 (Probable Cause – Officer Jeffrey Lubey Had Probable Cause to Arrest Plaintiff Anthony Navarro)

Defendants propose a jury instruction stating that Officer Jeffrey Lubey had probable cause to arrest Plaintiff for violating California Penal Code section 148(a), which makes it a misdemeanor to "willfully resist[], delay[], or obstruct[] any public officer [or] peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment." This Court has already determined as a matter of law that Officer Lubey had probable cause to arrest Plaintiff for this crime. Defendants' proposed instruction closely tracks the Court's order, *see* Motion for Summary Judgment Order (Dkt. No. 59, Pg. 7:11-9:8), and the law supports giving the instruction. *See Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009) ("[J]ury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading") (internal quotation marks omitted).

It is well-settled that in determining whether force was unreasonable, jurors should consider, among other things, the nature of the crime(s) at issue, whether the plaintiff was posing an immediate threat to the safety of the officers or others, and the circumstance(s) known to the officers at the time they used force. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 396 (1989) (determining whether force was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue" and "whether the suspect poses an immediate threat to the safety of the officers or others"); NCMCJI Instruction No. 9.27 (similar); CACI Instruction No. 440 (similar). Defendants' proposed instruction gives jurors the information they need to consider these factors: not only the specific crime Plaintiff had undisputedly committed by the time Officer Lubey used force, but also that in committing the crime, Plaintiff had endangered others by interfering with Officer Horton as he was trying to help someone in a dangerous situation.

The equities also support giving this instruction. Among other things, Defendants expect Plaintiff to argue that he was just trying to celebrate when Officer Lubey took him to the ground. Plaintiff makes similar statements repeatedly in body-worn camera videos that are expected to come into evidence. For Defendants to have a fair trial, the jury must know that immediately before the takedown, Plaintiff was committing a crime that involved endangering others.

**B. Defendants' Proposed Special Instruction No. 2 (Officers Not Required to Use Least Force Possible)**

Defendants propose a jury instruction explaining that there is no requirement for police officers to use the least intrusive degree of force possible. Plaintiff objects to this instruction.

It is critical for the jury understand that Officer Lubey was not legally required to use the least amount or most effective force to restrain Plaintiff. Rather, the question is whether the force he did use was reasonable, viewing the facts from the perspective of a reasonable officer under the circumstances presented. *See, e.g.*, *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022) ("It is also well-established that police officers are not required to use the least intrusive degree of force possible." (internal quotation marks omitted)); *Luchtel v. Hagemann,* 623 F.3d 975, 982 (9th Cir. 2010) ("Police officers need not use the least intrusive means available to them . . . ."); *Forrester v. City of San Diego*, 25 F.3d 804, 807-08 (9th Cir. 1994) ("Police officers, however, are not required to use the least intrusive degree of force possible. Rather, as stated above, the inquiry is whether the force that was used to effect a particular seizure was reasonable, viewing the facts from the perspective of a reasonable officer on the scene. . . . Whether officers hypothetically could have used less painful, less injurious, or more effective force in executing an arrest is simply not the issue." (citing, inter alia, *Graham*, 490 U.S. at 396)); *Scott v Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("Officers thus need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable.")

Defendants are entitled to this proposed instruction because it accurately states the law, has foundation in evidence, and is not misleading. *See, e.g.*, *Clem*, 566 F.3d at 1181.

**C. Defendants' Proposed Special Instruction No. 3 (Officers Not Liable for Use of Reasonable Force that Causes Injury)**

Defendants propose a jury instruction explaining that police officers are not liable for reasonable force that causes injury, even serious injury. Defendants are liable only for unreasonable force. Plaintiff objects to this instruction.

Defendants' proposed instruction is important in this case because video and photographs show Plaintiff's bloodied face following the use of force, and because Plaintiff claims the incident exacerbated pre-existing mental health issues, including post-traumatic stress disorder. Plaintiff will

argue that his injuries, and the effects he claims they have had on his life, were serious. For Defendants to have a fair trial, it is critical that the jury understand that so long as the force was reasonable, Defendants are not liable even though Plaintiff was injured.

Defendants' proposed instruction correctly states the law. *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 383 (2007) ("Whether or not Scott's actions constituted application of 'deadly force,' all that matters is whether Scott's actions were reasonable."); *Sabbe v. Washington Cnty. Bd. of Comm'rs*, 84 F.4th 807, 828 (9th Cir. 2023) (police officers' use of deadly force did not violate Fourth Amendment); *Miller v. Clark County*, 340 F.3d 959, 968 (9th Cir. 2003) ("Notwithstanding the serious injuries to Miller, there was no use of excessive force under the circumstances."); *Forrester*, 25 F.3d at 806 (upholding jury verdict that police did not use excessive force to arrest protesters, where, among other things, the officers "forcibly moved the arrestees by tightening OPNs [Orcutt Police Nonchakus] around their wrists until they stood up and walked," which caused injuries including a broken wrist). Defendants' proposed instruction is also properly supported by the evidence for the reasons discussed above. Thus, the instruction is proper. *See, e.g.*, *Clem*, 566 F.3d at 1181.

**D. Defendants' Proposed Special Instruction No. 4 (Lack of Cooperation Can Justify Use of Force)**

Defendants propose a special instruction that lack of cooperation can justify use of force. Plaintiff objects.

This proposed instruction is necessary and supported by the evidence, and it accurately states the law. Among other things, the evidence will show that before Officer Lubey used any force, both Officer Horton and Officer Lubey gave Plaintiff orders to get back. Plaintiff continued trying to make physical contact with the officers, and continued moving physically close to them, despite those orders. Plaintiff might try to persuade the jury that Officer Lubey should have spent more time on de-escalation. The proposed instruction will eliminate jurors' speculation or confusion about whether lack of cooperation can justify use of force. Under the law, it can. *See, e.g.*, *Tatum v. City and County of San Francisco,* 441 F.3d 1090, 1096-97 (9th Cir. 2006) (use of control hold "was objectively reasonable under the circumstances" despite that "the criminal conduct underlying [the] arrest was not severe," where the arrestee posed a threat to himself, the police, and possibly others; behaved

erratically; and resisted arrest); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921-22 (9th Cir. 2001) (using physical force to handcuff the plaintiff was objectively reasonable where the plaintiff "refused to cooperate and provide her . . . identification when requested," the officer warned her that "she would be arrested if she did not cooperate," the plaintiff continued refusing to cooperate, and, when the officer attempted to handcuff the plaintiff, she "stiffened her arm and attempted to pull free"); *Forrester*, 25 F.3d at 806 (use of force not excessive where "the officers warned the demonstrators that they would be subject to pain compliance measures if they did not move, that such measures would hurt, and that they could reduce the pain by standing up," the demonstrators did not cooperate, and the officers "then forcibly moved the arrestees by tightening OPNs [Orcutt Police Nonchakus] around their wrists until they stood up and walked," causing injuries).

**E. Defendants' Proposed Special Instruction No. 5 (Arrest or Detention – Use of Reasonable Force – Duty to Submit)**

Defendants request that the Court provide this instruction to the jury. This instruction is a standard California jury instruction (criminal) and tracks the California Penal Code. It is highly relevant to this case, given that the incident at issue arises during a police officer's use of force in an attempt to subdue an individual who was interfering with the police in the middle of their duties, had assaulted an officer, and posed a safety threat to the officers and others.

**F. Defendants' Proposed Special Instruction No. 6 (Officers May Reasonably Rely on Information from Other Law Enforcement Sources)**

Defendants ask the Court to give a special instruction which indicates that an officer may rely on information from other law enforcement sources when carrying out his/her duties. The instruction accurately states the law. *See United States v. Hensley*, 469 U.S. 221, 231-32 (1985) ("We conclude that, if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, . . . to pose questions to the person, or to detain the person briefly while attempting to obtain further information." (citations omitted)); *United States v. Ramirez*, 473 F.3d 1026, 1037 (9th Cir. 2007) ("Where one officer knows facts constituting reasonable suspicion or probable cause (sufficient to justify action under an exception to the warrant requirement), and he communicates an appropriate order or request, another officer may conduct a

warrantless stop, search, or arrest without violating the Fourth Amendment."); *United States v. Robinson*, 536 F.2d 1298, 1299 (9th Cir. 1976) ("We recognize that effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.").

Defendants' proposed instruction is directly applicable to the facts of this case, where many officers were assigned to patrol the intersection of 21st Street and Mission Street and the surrounding area during a chaotic, rapidly evolving situation. One or more officers will likely testify they relied on information from their colleagues in making decisions relevant to this case—such as instructions they may have received from supervisors about enforcement priorities and safety concerns that evening, or statements that Plaintiff had or had not been searched, as events unfolded. Fairness requires that the jury understand that officers can permissibly rely on such information.

**G. Defendants' Proposed Special Instruction No. 7 (No Duty to Retreat)**

Defendants request that the Court issue a special instruction stating that a police officer who is attempting to make an arrest, and using no more than reasonable force, is not required to desist from his attempt because an individual resists or threatens to resist. Here, the evidence shows that Officer Lubey told Plaintiff to back away, which Plaintiff refused to do. Only after this and after having previously seen Plaintiff accost another officer, did Officer Lubey use force. As the Ninth Circuit has made clear, law enforcement officers are not required to "indefinitely retreat if able." *Napouk v. Las Vegas Metro. Police Dep't*, 123 F.4th 906, 919 (9th Cir. 2024) (in wrongful death action alleging excessive force, stating that "we decline to create a rule by which officers have a duty to indefinitely retreat when faced with an immediate threat."); *Reed v. Hoy*, 909 F.2d 324, 331 (9th Cir. 1989) ("Reed has not cited to this court a single case from any jurisdiction suggesting that police officers have the same duty to retreat as ordinary citizens. In our view, such a duty may be inconsistent with police officers' duty to the public to pursue investigations of criminal activity. We are reluctant to apply such a rule in the absence of some clear authority. . . . We conclude that, under Oregon law, the duty to retreat does not extend to police officers performing their official function."), *overruling on other*

*grounds recognized in Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 956 n.14 (9th Cir. 2010).

The Court should give Defendants' proposed instruction because it accurately states the law, has a basis in the evidence, and is not misleading. *See, e.g.*, *Clem*, 566 F.3d at 1181.

**H. Defendants' Proposed Special Instruction No. 8 (Motivation of Officer Irrelevant)**

Defendants propose a jury instruction to specify that the jury may not consider a police officer's actual motivation to use force and that any improper motive does not, without more, establish that an officer's use of force was excessive. The instruction accurately states the law. *See Graham*, 490 U.S. at 397 ("[T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." (internal quotation marks and citations omitted)); *Monzon v. City of Murrieta*, 978 F.3d 1150, 1157 (9th Cir. 2020) ("In determining reasonableness, the Supreme Court has instructed us to examine the 'facts and circumstances confronting [the officers], without regard to their underlying intent or motivation.'" (quoting *Graham*, 490 U.S. at 397)); *Tatum*, 441 F.3d at 1095 ("We consider the facts underlying an excessive force claim from the perspective of a reasonable officer on the scene, without regard to the arresting officer's subjective motivation for using force."). This instruction is necessary because Defendants anticipate that Plaintiff will argue—as he did when opposing Defendants' motion for summary judgment—that Lubey used excessive force solely to punish Plaintiff for his speech. Without this instruction, Plaintiff may mislead the jury into finding that Officer Lubey's alleged improper motivation renders any use of force excessive.

**I. Defendants' Proposed Special Instruction No. 9 (Law Enforcement Officers Have Discretion in Determining the Type and Amount of Force to Apply)**

Defendants propose a jury instruction to specify that police officers have discretion in determining the type and amount of force to apply. The instruction accurately states the law. *See, e.g.*, *Forrester*, 25 F.3d at 808 ("Each officer had the discretion to use force or not, and if deciding to do so, how much force to apply."); *cf. Graham*, 490 U.S. at 396-97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second

judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. . . . [T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."); Cal. Pen. Code § 835a(d) ("A peace officer who makes or attempts to make an arrest need not retreat or desist from their efforts by reason of the resistance or threatened resistance of the person being arrested.").

The proposed instruction is important given the facts in this case—including that Officer Horton did not use force against Plaintiff, whereas Officer Lubey did. The jury should understand that the fact that another law enforcement officer might have handled the situation differently does not equate to a finding that Officer Lubey's actions were unconstitutional. Any such argument would be misleading: the legal question is whether the force Officer Lubey used was reasonable. Defendants' proposed instruction makes this principle clear.

**J. Defendants' Proposed Special Instruction No. 10 (Totality of the Circumstances)**

Defendants propose an instruction stating that the need for quick decision-making is relevant to the totality of the circumstances facing officers when deciding whether and how to use force. The proposed instruction quotes directly from *Graham*, 490 U.S. at 396-97 (stating that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation"). The instruction is necessary and appropriate here because the incident at issue unfolded rapidly, in a crowded area, during a chaotic street celebration. And the instruction is not redundant: the NCMCJI instruction regarding excessive force (No. 9.27) alludes to the principle but does not expressly state it. *See, e.g.*, NCMCJI No. 9.27 (admonishing jurors not to judge reasonableness "with the 20/20 vision of hindsight," and to consider, among other things, "changing circumstances" leading up to the use of force).

**K. Defendants' Proposed Special Instruction No. 11 (Crimes Under California Law)**

Defendants propose a jury instruction that defines two crimes under California law. This Court has already determined as a matter of law that Officer Lubey had probable cause to arrest Plaintiff for one of the crimes: willfully resisting, delaying, or obstructing a police officer in discharging or

attempting to discharge his duties. Cal. Pen. Code § 148; *see* Motion for Summary Judgment Order (Dkt. No. 59, Pg. 7:11-9:8). The other crime is battery against the person of a police officer. Cal. Pen. Code §243(b). Plaintiff was cited for both crimes on the date of the incident.

Defendants' proposed instruction is proper: it accurately defines the crimes at issue, relates directly to the evidence, and is not misleading. *See, e.g.*, *Clem*, 566 F.3d at 1181.

As discussed in connection with Defendants' proposed Special Instruction No. 1 (Probable Cause), it is well-settled that in determining whether force was unreasonable, jurors should consider, among other things, the nature of the crime(s) at issue, whether the plaintiff was posing an immediate threat to the safety of the officers or others, and the circumstance(s) known to the officers at the time they used force. *See, e.g.*, *Graham*, 490 U.S. at 396 (determining whether force was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue" and "whether the suspect poses an immediate threat to the safety of the officers or others"); NCMCJI Instruction No. 9.27 (similar); CACI Instruction No. 440 (similar). NCMCJI Instruction No. 9.27 further states that jurors should consider "whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm."

Here, the Court has already found, and Plaintiff cannot dispute, that Officer Lubey had probable cause to arrest Plaintiff for violation of California Penal Code section 148. Based on the facts he knew before he took Plaintiff to the ground, Officer Lubey had seen Plaintiff commit battery on a police officer. To properly consider the totality of the circumstances in determining whether Officer Lubey's use of force was reasonable, the jury is entitled to know that is a crime.

Defendants also expect Plaintiff to argue that he was just trying to celebrate when Officer Lubey took him to the ground. Plaintiff says so repeatedly in body-worn camera videos that are expected to come into evidence. For Defendants to have a fair trial, the jury must know that Plaintiff was committing a crime that involved endangering others. Defendants must also be able to argue to the jury that Officer Lubey had probable cause to believe Plaintiff was committing a crime "involving the infliction or threatened infliction of serious physical harm." NCMCJI Instruction No. 9.27.

Defendants are entitled to this proposed instruction about their theory of the case, as it is "supported by law and has foundation in the evidence." *Clem*, 566 F.3d at 1181 (internal quotation marks omitted).

**L. Defendants' Proposed Special Instruction No. 12 (Officer Can Lawfully Consider Arrestee's Protected Speech to Assess Level of Threat Posed)**

Plaintiff raises a First Amendment claim, alleging that Officer Lubey's escort method was in retaliation for his protected speech. Under the law, even where speech or conduct is protected, law enforcement can use the content of an individual's speech to assess the threat posed by the individual, without violating the First Amendment. Accordingly, Defendants request a special jury instruction so informing the jury.

Jury instructions "must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." *Clem*, 566 F.3d at 1181 (citation omitted). Each party is "entitled to an instruction about his or her theory of the case if it is supported by the law and has foundation in the evidence." *Id.* (citation omitted). "A district court therefore commits error when it rejects proposed jury instructions that are properly supported by the law and the evidence." *Id.*

Here, Plaintiff claims that, after his arrest, he "questioned" and "criticized" Lubey, followed by Lubey's choice to use a painful escort method. Plaintiff specifically alleges that he asked Officer Lubey why he was taken into custody and called Officer Lubey "sensitive," which Plaintiff claims "appeared to annoy Defendant," and led to the use of an allegedly painful escort method by Officer Lubey. The record shows that the escort method utilized by Officer Lubey is a standard police practice. The evidence (including Plaintiff's abusive language towards police and failure to heed directions to remain seated without reaching into his pockets) demonstrated Plaintiff's intent to disregard police instructions, refusal to cooperate with simple directions, and his obvious intoxication. This led Officer Lubey to determine that Plaintiff posed a risk of running into the crowded streets, or spitting at or biting officers during the escort, risks mitigated by the challenged escort method.

As the Supreme Court made clear in the context of retaliatory arrest claims, "[o]fficers frequently must make 'split-second judgments' when deciding whether to arrest, and the content and manner of a suspect's speech may convey vital information—for example, if he is 'ready to cooperate'

or rather 'present[s] a continuing threat.'" *Nieves v. Bartlett*, 587 U.S. 391, 401 (2019). In other words, police are allowed to use the "content and manner of a suspect's speech" in assessing the level of threat posed, without running afoul of the Constitution. *See also Lozman v. Riviera Beach*, 585 U.S. 87, 98 (2018) ("The content of the suspect's speech might be a consideration in circumstances where the officer must decide whether the suspect is ready to cooperate or, on the other hand, whether he may present a continuing threat to interests that the law must protect.").

Moreover, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." *Nieves*, 587 U.S. at 398. In short, Plaintiff must demonstrate "that the adverse action against [him] would not have been taken absent the retaliatory motive." *Id.* at 399. If the record shows some bad motive on the part of a defendant but the action complained of would have been taken even *without* the bad motive, the claim fails because although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Hartman v. Moore*, 547 U.S. 250, 260 (2006). Further support for this jury instruction can be found in *Reichle v. Howards*, 566 U.S. 658 (2012), which also arose in the retaliation context. There, the Court made clear that, although "[a]n officer might bear animus toward the content of a suspect's speech," the officer "may decide to arrest the suspect because his speech *provides evidence of a crime or suggests a potential threat*." *Id.* at 668 (emphasis added). In short, "the connection between alleged animus and injury may be weakened in the arrest context by a police officer's wholly legitimate consideration of speech." *Id.*

The Ninth Circuit's decision in *Boquist v. Courtney*, 32 F.4th 764, 778 (9th Cir. 2022) also supports issuing this special instruction. There, the Court pointed out that "government officials do not violate a plaintiff's First Amendment rights if they had an objectively legitimate need to implement security measures in response to information conveyed by the plaintiff's speech, and would have implemented the same security measures in the absence of any retaliatory motive." *Id.* Without the requested special instruction, the jury would be left with the misimpression that *any* consideration of Plaintiff's speech by Officer Lubey is constitutionally barred, which is incorrect based on the law discussed above.

**M. Defendants' Proposed Special Instruction No. 13 (Qualified Immunity)**

Defendant Lubey intends to assert his qualified immunity defense at trial. Therefore, Defendants have proposed special interrogatories to the jury regarding factual issues, the answers to which will help the Court decide as a matter of law whether Officer Lubey is entitled to qualified immunity. Under Defendants' proposal, the Court would submit the special interrogatories to the jury only if Plaintiff prevails on one or both of his constitutional claims. In that event, an instruction explaining the process for deliberating on, and answering, the special interrogatories would be necessary. Defendants' proposed Special Instruction No. 13 serves that purpose. It directs the jury to deliberate on each special interrogatory and to answer each—unanimously—"yes" or "no." Neither the proposed instruction, nor any special interrogatory, asks the jury to decide the legal issue of whether Officer Lubey is entitled to qualified immunity.

The Ninth Circuit has endorsed this approach. *See Morales v. Fry*, 873 F.3d 817, 823-24 (9th Cir. 2017). If Plaintiff prevails on one or both of his constitutional claims, the jury will have already decided the first prong of the qualified immunity issue: whether there was a constitutional violation. The Ninth Circuit has made clear that the second prong—whether the law was clearly established at the time of the incident that Officer Lubey's actions would violate the constitution—is "a question of law that must ultimately be decided by a judge." *Morales*, 873 F.3d at 819. "[S]pecial interrogatories to the jury can be used to establish disputed material facts" to aid the court's legal analysis. *Id.* at 824. Special interrogatories for this purpose are prudent where, as here, "a qualified immunity case goes to trial because disputed factual issues remain." *Id.* at 823; *see also id*. at 824 (agreeing with the NCMCJI's observation that "[w]hen there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity"). "[T]he decision whether to submit special interrogatories to the jury is a matter committed to the discretion of the district court." *Hung Lam v. City of San Jose*, 869 F.3d 1077, 1086 (9th Cir. 2017) (internal quotation marks omitted) (quoting *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999)).

Here, Defendants moved for summary judgment on qualified immunity on both the First and Fourth Amendment claims. The Court acknowledged that disputed factual issues were relevant to

qualified immunity, and construed the facts in the light most favorable to Plaintiff to frame and analyze whether the rights at issue were clearly established. *See, e.g.*, *see* Motion for Summary Judgment Order (Dkt. No. 59) Pgs. 12-13, 15-16. For example, the Court "assume[d] that Plaintiff did not shove Lubey and the only crime at issue was delaying Horton." *Id.* at 10. The Court then framed the legal question for qualified immunity on the Fourth Amendment excessive force claim as whether, by June 16, 2022, it was clearly established that "using intermediate force for a nonviolent crime of delaying an officer is a violation of the Constitution." *Id.* at 14. The Court's answer was yes, and the Ninth Circuit affirmed. At trial, Defendants will not have a fair shake at renewing Officer Lubey's qualified immunity defense if the jury does not make factual findings through special interrogatories. Stated differently, the jury's factual findings on issues central to qualified immunity might not be clear from answers on a general verdict form. The disputed fact regarding the shove is just one example of this problem: the jury could determine that Plaintiff shoved Lubey, but still find for Plaintiff on the excessive force claim. No one would know the jury's factual finding based only on the verdict that Officer Lubey used excessive force. Defendants' proposed special interrogatories are a solution to this problem (which could arise regarding numerous disputed factual issues, not just the shove). Defendants' Proposed Special Instruction No. 13 properly explains the procedure for deliberating on the special interrogatories, without asking jurors to address any legal issues.

Dated: October 2, 2026

DAVID CHIU
City Attorney
JENNIFER E. CHOI
Chief Trial Deputy
JOSE A. ZELIDON-ZEPEDA
LISA E. GIARRATANO
KATHERINE B. BEARMAN
Deputy City Attorneys

By: *<u>/s/ Jose A. Zelidon-Zepeda</u>*
JOSE A. ZELIDON-ZEPEDA

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO
AND JEFFREY LUBEY